**STATE of Iowa, Appellant,**

v.

**Larry O. LUMMUS, Appellee.**

**No. 88–1016.**

Court of Appeals of Iowa.

Oct. 5, 1989.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., and John Otto, County Atty., for plaintiff-appellant.

William L. Wegman, State Public Defender, and B. John Burns, Asst. Public Defender, for defendant-appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

In February 1988 a van was stolen from a residence in Atlantic, Iowa. The van was subsequently stopped in Texas and its three occupants were arrested. One of the occupants, defendant Larry Lummus, remained in jail in Texas for over two months for a probation/parole violation stemming from a prior theft conviction. The other two occupants (Hill and Herron) were promptly returned to Iowa.

While Lummus was in jail in Texas, an Assistant Cass County Attorney engaged in plea negotiations with Lummus by mail and telephone. In one letter, the assistant county attorney offered to dismiss the charge pending against Lummus in return for his agreement to discuss the theft and to testify at the trials of Hill and Herron. Lummus called the assistant county attorney and accepted this offer. Due to subsequent negotiated guilty pleas by the other two defendants, Lummus was later notified that his testimony against them would not be needed.

Upon his return from Texas to Iowa, Lummus was charged with first-degree theft in Cass County. Lummus filed a motion to dismiss this charge. After a hearing, the district court sustained Lummus' motion and dismissed the charge against him. The district court concluded that the State had made an offer to dismiss the charge in return for Lummus' agreement to provide details relative to the theft and to testify against the two codefendants. The court determined that Lummus had accepted the State's offer, and that the parties had thereby reached a valid and enforceable agreement calling for the dismissal of the charge. The trial court found that the prosecution had used Lummus' information and agreement to testify during its negotiations with the other defendants and that Lummus was prejudiced by this conduct. The district court concluded that allowing the State to withdraw from the plea bargain would amount to an intolerable violation "of our time-honored fair play norm and accepted professional standards."

The State has appealed from the district court order dismissing the first-degree theft charge against Lummus. The State contends the dismissal was erroneous because the defendant had not relied to his detriment on the representations of the Assistant Cass County Attorney.

■ In ruling on a motion to dismiss as a remedy for the State's alleged repudiation of a plea agreement, the trial court possesses the same limited discretion it exercises when ruling on a motion to dismiss for failure to provide a speedy trial. *State v. Hovind*, 431 N.W.2d 366, 368 (Iowa 1988). Our review of the trial court's ruling is not de novo. To secure a reversal, the State must show the trial court abused its limited discretion. *State v. Edwards*, 279 N.W.2d 9, 10 (Iowa 1979). This court does not defer to the trial court in the matter of the applicable law. The trial court's order must be reversed if it is found that there is no reasonable basis for it in the record. *Id.*

It appears there is a difference of opinion as to what standard is to be applied in determining whether a prosecutor may unilaterally withdraw a plea bargain that has been accepted by a defendant. The State contends that it is well established that absent the entry of a plea or action by a defendant constituting detrimental reliance, a plea may be withdrawn. *Edwards*, 279 N.W.2d at 11. Lummus contends that a plea bargain may not be withdrawn when the circumstances of doing so would render it to be a violation of "our time-honored fair play norm." *State v. Kuchenreuther*, 218 N.W.2d 621, 624 (Iowa 1974). A review of the law in this area will prove beneficial in assisting this court to reach its decision.

In 1971 the United States Supreme Court rendered the decision of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). *Santobello* addressed whether a state's failure to keep a commitment concerning a sentence recommendation on a guilty plea required a new trial. The prosecutor had agreed to make no recommenda-

tion as to the sentence if the defendant agreed to plead guilty to a lesser-included offense. The defendant accepted the agreement and pled guilty. The State, however, breached the agreement and recommended imposition of the maximum sentence to the judge. The Court recognized that plea bargaining was an essential component of the administration of justice and was to be encouraged. *Santobello*, 404 U.S. at 260, 92 S.Ct. at 498, 30 L.Ed.2d at 431. The Court stated that fairness is presupposed in securing an agreement between an accused and a prosecutor, and it held "that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case...." *Id.* at 261–63, 92 S.Ct. at 498–99, 30 L.Ed.2d at 432–33. The Court left it to the state court's discretion to determine if specific performance of the plea agreement should be entered or if the defendant should be allowed to withdraw his plea.

Three years later in *State v. Kuchenreuther*, 218 N.W.2d 621 (Iowa 1974), the Iowa Supreme Court was confronted with whether the state could unilaterally withdraw a plea agreement that had been accepted by the defendant. In *Kuchenreuther* the defendant had agreed to provide information on various criminal activities, testify with regard thereto, plead guilty to a charge of disturbing the peace, and to make full restitution of cash he had stolen. In return, the State had agreed to grant him immunity for all crimes he had committed up to and including January 10, 1972. Pursuant to the agreement the defendant had effected restitution and cooperated with the county attorney as agreed, but he was not afforded the opportunity to plead on a charge of disturbing the peace. Instead the county attorney charged him with larceny in the nighttime contrary to the provisions of the plea agreement. The Iowa Supreme Court noted the *Santobello* decision and particularly this language from the opinion:

> [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Id.* at 624, *quoting Santobello*, 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433. The Iowa Supreme Court concluded that to allow the prosecutor to breach the plea agreement and charge the defendant with larceny "would unduly undermine our system of justice," *Kuchenreuther*, 218 N.W.2d at 623, and was "nothing less than an intolerable violation of our time-honored fair play norm, and accepted professional standards." *Id.* at 624.

In 1979 the Iowa Supreme Court considered the ramifications of *Santobello* and *Kuchenreuther* in *State v. Edwards*, 279 N.W.2d 9 (Iowa 1979). In *Edwards* a defendant had agreed to plead guilty to assault and battery in return for dismissal of a felony charge. Before the defendant had entered a plea he was informed that the State was not going to honor the plea arrangement. In its decision the Iowa Supreme Court examined *Santobello* and *Kuchenreuther* and determined that a rule could be drawn from the cases. "The State may withdraw from a plea bargain at any time prior to, but not after, actual entry of a guilty plea by a defendant or other action by a defendant constituting detrimental reliance upon the arrangement." *Id.* at 11. The *Edwards* court concluded that as the defendant had not entered a guilty plea and since there was no evidence of detrimental reliance, the plea agreement could be withdrawn.

In *State v. Strable*, 313 N.W.2d 497 (Iowa 1981), the Iowa Supreme Court affirmed the rule set forth in *Edwards*. In *Strable*, the defendant was sentenced pursuant to a plea agreement in which he pled guilty to sexual abuse in return for a recommendation for a suspended sentence and probation. The trial court sentenced Strable in accordance with the State's recommendation and he began his probation with a six-month term at a community correctional residential work release facility. This sentence was vacated when it was realized that probation was not an available sentencing alternative for a conviction of sexual abuse. A second plea agreement

was then made. In return for Strable's plea of guilty to lascivious acts with a child, the State agreed to recommend probation and a term at the residential facility as it had after entry of the guilty plea to sexual abuse. Before the terms of this second agreement were carried out, the State informed the defendant that it would not carry through with the second plea agreement. The defendant alleged that the time he spent at the work release facility was detrimental reliance and the State should have been forced to comply with the second plea agreement. The court dismissed this agreement because the time served was done pursuant to the *first* plea agreement and was not done in reliance on the second agreement for which he wanted specific performance. The court noted that the defendant had been allowed to withdraw the plea of guilty that he had entered pursuant to the first plea agreement and he was given credit for the time spent at the residential facility on his final sentence. The court cited *Kuchenreuther* and concluded that this handling of the matter complied with the notions of "fair play" that surround the plea bargaining process.

In *State v. Epps*, 316 N.W.2d 691 (Iowa 1982), the Iowa Supreme Court was forced to consider what "detrimental reliance" meant and if *Kuchenreuther* had in fact encompassed that standard. In *Epps*, an assistant county attorney had informed the defendant that the State would consider accepting a plea to second-degree murder·if the defendant would offer information and testimony against his brother. Three days later the defendant told the assistant county attorney that he would accept the plea bargain. The assistant county attorney said he would have to consult with the county attorney. He did so and then informed the defendant that the deal would not be accepted. The defendant argued that he had detrimentally relied on the State's offer when he provided information which was inconsistent with his prior defense, and he claimed that this change in position made it ethically impossible for his attorney to present the defense he had planned on because it was based on the defendant's prior denial of involvement.

The court determined that detrimental and prejudicial reliance were synonymous and that "[t]he crucial test of detriment or prejudice is whether the defendant had suffered harm from reliance on the plea bargain." *Id.* at 694. The court concluded that reliance could not be detrimental if it were not prejudicial, and it specifically rejected the defendant's argument that detrimental reliance without prejudice was the basis for requiring the State to perform a plea bargain in *Kuchenreuther*. *Id.* The court felt that prejudicial reliance had been amply demonstrated in *Kuchenreuther*.

In finding no detrimental reliance in *Epps*, the court relied on the fact that any admissions made by the defendant during plea discussions could not be used against him, Iowa R.Crim.P. 9(5), and therefore any statements he had made could not constitute detrimental reliance. The court also rejected that the defendant's change in lawyers was the result of detrimental reliance. The court found that the record revealed that he had sought a change in legal representation for other reasons. Furthermore, the change in lawyers enabled him to present the defense he had asserted before the plea discussions.

Subsequent to *Epps*, the United States Supreme Court rendered another decision on the issue of plea agreements. In *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), a prosecutor had agreed to accept a plea of guilty to felony murder in return for a specific recommended sentence by the state. The plea bargain was withdrawn by the state prior to the entry of a plea by the defendant. The question presented to the court was whether a defendant's acceptance of a prosecutor's proposed plea bargain creates a constitutional right to have the bargain specifically enforced. The Court held:

A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution.

*Id.* at 507–08, 104 S.Ct. at 2546, 81 L.Ed.2d at 442.

The Court distinguished *Santobello* as a case in which a *plea had been entered* pursuant to a plea agreement. *Id.* at 510, 104 S.Ct. at 2548, 81 L.Ed.2d at 444. In *Mabry*, no plea was ever entered prior to the State's withdrawal of the plea bargain. For our purposes, it is important to note that the court in *Mabry* was not asked to consider a situation in which a defendant had relied to his detriment on a plea agreement and that agreement was later withdrawn. This scenario will fall somewhere between *Mabry* and *Santobello* and remains to be addressed by the Court.

*State v. Aschan,* 366 N.W.2d 912 (Iowa 1985), *affd.* 861 F.2d 520 (8th Cir.1988), is the most recent decision of the Iowa Supreme Court dealing with the termination of plea bargain agreements. In *Aschan,* the State had agreed to allow the defendant to plead guilty to an aggravated misdemeanor if he satisfactorily completed a sexual abuse treatment program. The prosecution subsequently terminated the agreement because the defendant had not complied with several of the program requirements. The defendant alleged that his substantive due process rights to fundamental fairness and fair play had been violated by termination of the program. He requested that he be allowed to complete the program and plead guilty to a misdemeanor rather than a felony offense. The Iowa Supreme Court indicated its recognition of the *Mabry* decision and questioned the applicability of a due process argument to the case. *Id.* at 915. The court cited *Kuchenreuther* and stated that it was precedent outside the due process clause for requiring that a prosecutor's conduct with respect to plea bargaining be measured by "our time-honored fair play norm." *Id.*

Nevertheless, because the parties had postured the case as one involving fundamental fairness and fair play under the due process clause, the court applied that standard in its decision, while reserving a final decision as to what, if any, due process rights were implicated in a plea bargain agreement. *Id.* at 915, 917. After finding that the defendant was properly terminated from the program, the court appears to have applied a detrimental reliance analysis. The court concluded that the defendant was not prejudiced by inculpatory statements he had made as a condition for entering the program because those statements could not later be used against him. *Id.* at 917. The court also found that the defendant's participation for several months in the treatment program before the State withdrew the plea agreement did not constitute prejudicial or detrimental reliance. That finding is consistent with the fact that it was the *defendant's* failure to comply with the program requirements that led to termination of the program. To find otherwise would allow a defendant to reap the benefits of a plea bargain without having to comply with it himself.[1]

 In the case now before this court, Lummus contends that the case law has established two separate theories by which a court may dismiss a charge due to a withdrawn plea agreement by the State. One theory is premised on the detrimental reliance rule set forth in *Edwards.* Lummus contends that *Kuchenreuther* sets forth a separate theory for judging a prosecutor's withdrawal of a plea agreement. In its reply brief, the State rejects this two-theory approach and contends that the "fair play norm" of *Kuchenreuther* is an appropriate factor for consideration when the State has withdrawn from a plea agreement, but that it does not constitute a valid ground for reversal absent a showing of prejudice by the defendant. This court agrees with the view advanced by the State. At least two Iowa Supreme Court decisions have indicated that *Kuchenreuther* implicitly encompassed the detrimental reliance standard. *Epps,* 316 N.W.2d at 694; *Edwards,* 279 N.W.2d at 11.

---

1. This is consistent with the view taken by the Eighth Circuit on appeal. "[A]ppellant did not have a plea bargain; he merely had an executory agreement which would have ripened into the bargained-for misdemeanor plea if he had substantially fulfilled his obligations under the agreement. *Aschan v. Auger,* 861 F.2d 520, 522 (8th Cir.1988).

Whether this area of law will ultimately be premised upon a due process analysis, the *Kuchenreuther* "fair play norm," or a detrimental reliance standard remains to be seen. In the meantime, this court feels the existing case law points to the detrimental reliance test as the appropriate standard for review by this court.

■ Upon a review of the record, this court concludes that Lummus's agreement to testify and his conduct in providing the prosecutors with detailed information about the theft constitutes detrimental reliance in this case. Contrary to the State's argument, this case is distinguishable from *Epps* and *Aschan*. In those cases the Iowa Supreme Court found no detrimental reliance based on a defendant's admissions pursuant to plea discussions because that information would not be admissible at trial pursuant to Iowa Rule of Criminal Procedure 9(5). In the case now before this court, the trial court found that the prosecution had used Lummus's information and agreement to testify to negotiate pleas from the other two codefendants.[2] By using this agreement and information as leverage, the prosecutor was able to nullify the need for a plea agreement with Lummus. As set forth in *Edwards*, the crucial test of detriment or prejudice is whether the defendant has suffered harm from reliance on the plea bargain. What greater harm could a defendant incur than to provide information which is ultimately used to eliminate the need for the State's plea arrangement with him?

The Iowa Supreme Court has expressed its disdain for prosecutors who withdraw plea agreements. In *Aschan*, the court cited from the American Bar Association's Standards for Criminal Justice:

> It is unprofessional conduct for a prosecutor to fail to comply with a plea agreement, unless a defendant fails to comply with a plea agreement or other extenuating circumstances are present.

Standards for Criminal Justice § 3–4.2(c) (1982 Supp.). A defense counsel who reneges on representations made limits his or her professional effectiveness and adversely impacts judicial proceedings. *Edwards*, 279 N.W.2d at 12.

There was sufficient evidence from which the trial court could conclude that the State used Lummus's information and agreement to testify to his detriment. Finding no abuse of discretion, the decision of the trial court is affirmed.

AFFIRMED.

---

**2.** The trial court premised its decision to dismiss on two grounds. It incorrectly concluded that once a plea bargain offer was accepted the State could not unilaterally withdraw it. *See*

*Edwards*, 279 N.W.2d at 11. It also concluded that Lummus had relied to his prejudice upon the plea agreement. It is this finding of the trial court which this court affirms on appeal.