STATE OF NEBRASKA, APPELLEE, V. SAMUEL STEVEN MICELI, APPELLANT.
554 N.W.2d 427

Filed September 24, 1996.    No. A-95-991.

A. Michael Bianchi for appellant.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellee.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

Samuel Steven Miceli appealed his convictions in the county court for driving while under the influence of intoxicating liquor (DUI) under Neb. Rev. Stat. § 60-6,196 (Reissue 1993) and refusing to submit to a chemical test under Neb. Rev. Stat. § 60-6,197 (Reissue 1993). The district court affirmed the former and reversed the latter. The charges of which Miceli was convicted had been previously dismissed pursuant to an agreement between the county attorney and Miceli's counsel for Miceli to enter a pretrial diversion program, but were then refiled. Miceli claims he complied with the agreement, and he argues that the agreement precluded the refiling of the charges. He also claims his trial counsel was ineffective because he did not object to the evidence that Miceli refused to take a breath test. We conclude that the pretrial agreement did not preclude the refiling of the charges, but we also conclude that it was plain error for the trial court to admit evidence of Miceli's refusal to take the chemical test. Therefore, we reverse the DUI conviction and remand the cause for a new trial.

## FACTUAL BACKGROUND

The relevant evidence adduced at trial, in the light most favorable to the State, shows as follows: On February 22, 1994, Officer D.J. Barcal of the LaVista, Nebraska, police department was called to the area of 83d Street and Park View Boulevard in LaVista to investigate a report of a possible drunk driver. When Officer Barcal arrived on the scene, he observed an automobile that was stuck in a snowbank in a parking lot. Approximately 45 minutes before the officer arrived on the scene, the area had received 4 to 5 inches of snow. Officer Barcal observed tire tracks in the snow leading from the LaVista Keno Club across the street to where the car was located. Officer Barcal approached the vehicle, where Miceli was sitting. When Miceli stepped out of the vehicle, Officer Barcal noticed a strong odor of alcohol emanating from Miceli and observed Miceli stumble.

Miceli stated to Officer Barcal that he had left the LaVista Keno Club and had gotten stuck in the snow. Officer Barcal

requested that Miceli perform several field sobriety tests, and after Officer Barcal instructed him how to do so, Miceli complied. Miceli was unable to complete any of the several tests that were administered. Without the benefit of any on-the-scene chemical test, Officer Barcal reached the conclusion that Miceli was impaired and under the influence of alcohol. He arrested Miceli and transported him to the Sarpy County Jail. At the jail, Officer Barcal read Miceli the "Administrative License Revocation Advisement Post Arrest" form and then requested that Miceli consent to a chemical breath test. Miceli refused to consent to such a test. Miceli was charged with both DUI and refusing to submit to a chemical breath test.

Initially, Miceli filed a motion to suppress, and after a hearing that was held on April 28, 1994, that motion was denied. The trial was set for July 20. On July 18, Miceli's attorney initiated the first of three telephone conversations with the county attorney's office. These conversations resulted in an agreement that the charges would be dismissed if Miceli applied for the Sarpy County pretrial diversion program. The terms of the diversion program were not discussed. The evidence on this matter will be more fully discussed below. After these discussions, the State obtained dismissal of the charges. They were refiled on October 4, after Miceli withdrew from the diversion program.

Miceli moved for the court to enforce the "cooperation agreement," on the grounds that the State violated the agreement. After an evidentiary hearing on that motion, and after a separate hearing on a motion to suppress, both motions were denied, and a jury trial was held. Miceli was found guilty of both counts and subsequently sentenced to 6 months' probation, a $200 fine, and suspension of his operator's license for 60 days. Upon appeal, the district court reversed the conviction and dismissed the charge of refusing to submit to a chemical test based upon plain error pursuant to *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995). However, the district court affirmed the trial court's order denying enforcement of the agreement between Miceli and the county attorney. The district court affirmed the DUI conviction. Miceli timely appeals from the district court's order.

## ASSIGNMENTS OF ERROR

Miceli alleges that the courts below erred in refusing to dismiss the charges because of the "cooperation agreement." Miceli also alleges that he was denied his constitutional right to counsel because his trial counsel did not object to the evidence of his refusing to submit to a chemical breath test. We conclude that the admission of such evidence was plain error, and therefore we do not consider the issue of the adequacy of counsel.

## STANDARD OF REVIEW

Regarding questions of law, an appellate court is obligated to reach a conclusion independent of determinations reached by the trial court. *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996); *State v. Lynch*, 248 Neb. 234, 533 N.W.2d 905 (1995).

Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Perrine v. State*, 249 Neb. 518, 544 N.W.2d 364 (1996); *In re Estate of Morse*, 248 Neb. 896, 540 N.W.2d 131 (1995).

## DISCUSSION

*Enforcement of Agreement.*

Miceli contends that the county attorney could not properly refile the charges. At the county court hearing on that issue, the only evidence was the testimony of Miceli and his attorney, who made the agreement with the county attorney's office, and the documents about the Sarpy County pretrial diversion program.

Miceli's attorney testified that the trial had been set for July 20, 1994, when on July 18 he contacted the Sarpy County Attorney's office by telephone and talked with a deputy county attorney. The gist of the conversation between them was that the "County Attorney would dismiss the then pending complaint [charging Miceli with DUI and refusing to take the test] if he [Miceli] would go to the Sarpy County Diversion Office and if he would give a written statement that he was trying to operate

the motor vehicle and was intoxicated." Miceli's attorney contacted Miceli, and Miceli agreed, except that he wanted to give only an oral statement rather than a written one. Miceli's attorney testified that in later telephone conversations the county attorney's office agreed to this change. The trial was not held, and in August, Miceli received the dismissal from the county court, and he assumed the case was over.

Pursuant to a stipulation, Miceli's counsel introduced a letter dated August 1, 1994, from the director of the diversion office addressed to Miceli and a "Synopsis of Alcohol Diversion Program." Neither the evidence nor the stipulation discloses when the "Synopsis" might have been communicated to Miceli or his counsel. In that letter, Miceli is told his case has been sent to that office by the county attorney's office, to call the diversion office for an appointment within 10 days of the date of the letter, and what he should bring to the initial meeting. The "Synopsis of Alcohol Diversion Program" in evidence is not specifically addressed to any person, but it invites the recipient to participate in the alcohol diversion program for Sarpy County. The document states that the program is intended to reduce drunk driving without resorting to the traditional sanctions of the criminal justice system. First, the recipient is advised of the criminal sanctions, and then, the letter states: "If you desire to enter this program and are accepted into it after an initial interview, you will be expected to conform to any one or more of the following conditions for a minimum of six months . . . ." The document then lists several conditions such as abstaining from the use of alcohol, attending Alcoholics Anonymous (AA) meetings, attending an alcohol education course, attending private counseling or driving school, attending a victim impact panel, and, if necessary, entering an inpatient or outpatient alcohol treatment facility. The recipient is advised he or she must pay a nonrefundable fee. The document then advises the recipient that if the directions of the diversion officer are not followed, the original charges will be refiled. The document then states: "If you are not willing to admit at least to yourself that you are guilty of the [DUI] offense charged against you by the police, we do not want you in this program." The letter does not specifically state that the charges will be dismissed.

Miceli testified that he had two appointments with the diversion officer, John Dacey. Miceli testified that at the first meeting Dacey said that unless Miceli admitted being guilty of the charges, there was no basis for accepting him into the program, and that the matter should be dealt with within the judicial system. Miceli testified that Dacey asked him to voluntarily go to AA classes and that he did attend two classes. In the course of a conversation with Dacey, Miceli inquired about having to admit 100 percent of the charges in order to be accepted into the program. Miceli was told that if he would not admit his guilt of the DUI charge, there was no basis for accepting him into the diversion program. Miceli refused to continue with the program, and the original charges were refiled against him.

Miceli's counsel argued that the agreement he made with the county attorney's office constituted an agreement that if Miceli applied for the diversion program, the charges would be dismissed and the case concluded and that the charges could not be refiled. The conversations between the county attorney and Miceli's attorney must be interpreted in the light of existing law on the effect of the State's obtaining dismissal of a criminal case before jeopardy attaches and in the light of the letter and synopsis that were communicated to Miceli before he applied for the diversion program.

"Generally, a dismissal or nolle prosequi entered before jeopardy has attached does not bar a second prosecution for the same offense . . . ." 22 C.J.S. *Criminal Law* § 225 at 273 (1989). To infer an agreement on the State's part to dismiss the charges with prejudice for the simple act of going to the diversion office would be wholly unreasonable in light of the letter to Miceli and the synopsis of the program. Furthermore, the letter and synopsis clearly imply that an applicant for the program will not necessarily be accepted. The evidence offered by Miceli does not establish that the county attorney agreed to dismissal of the case with prejudice, nor does the evidence justify inferring such an agreement. The case was dismissed about the time that Miceli applied for the diversion program, and that is what the evidence shows the State agreed to. We note that both Miceli and his counsel testified to their understanding of the agreement, but their understanding is not proof of the terms of the

agreement, and their understanding appears to be unreasonable in the light of the documentary evidence.

Miceli argues that once an agreement is shown, the government bears the burden of establishing a breach by the defendant, and he relies upon *State v. Howe*, 2 Neb. App. 766, 514 N.W.2d 356 (1994). This statement implies that the ordinary rules on contract law control the enforcement of an agreement between a prosecutor and an accused. The statement is taken out of context. Agreements between a prosecutor and an accused are not governed by contract law.

"Plea agreements are like contracts; however, they are not contracts, and therefore contract doctrines do not always apply to them." (Emphasis omitted.) *U.S. v. Olesen*, 920 F.2d 538, 541 (8th Cir. 1990). In *State v. Copple*, 224 Neb. 672, 688, 401 N.W.2d 141, 153 (1987), the Supreme Court stated:

> "However, the courts have developed a concept of 'nonstatutory' immunity whereby the courts will enforce informal or procedurally flawed grants of immunity on equitable grounds. . . . These cases indicate that where the government has entered into an agreement with a prospective defendant and the defendant has acted to his detriment or prejudice in reliance upon the agreement, 'as a matter of fair conduct, the government ought to be required to honor such an agreement.' "

(Quoting *United States v. Carpenter*, 611 F. Supp. 768 (N.D. Ga. 1985).) On the basis of this and other authority discussed in *Howe*, we stated the rule to be: "[C]ooperation agreements are enforceable on equitable grounds if (1) the agreement was made; (2) the defendant has performed whatever the defendant promised to perform; and (3) in performing, the defendant acted to his or her detriment or prejudice." *State v. Howe*, 2 Neb. App. at 774, 514 N.W.2d at 362. In this case, we conclude under the same authority that an accused agreeing to participate in a diversion program must be treated fairly and equitably and that the prosecution may not take advantage of the accused.

Of course, the existence of the agreement to participate in the diversion program, its terms, and whether it was breached are necessary factual determinations before an agreement between a prosecutor and a defendant will be enforced on equitable

grounds, but regardless of any factual determination that might be made on these issues, the defendant must have acted to his detriment or prejudice. The evidence shows that pursuant to the agreement, Miceli met with the diversion officer on two occasions and attended two AA meetings. While such acts might be sufficient to supply the consideration for a contract, they are hardly of such scope that equity requires the courts to prevent the State from prosecuting a serious criminal charge.

*Ineffective Assistance of Counsel.*

In this direct appeal, Miceli has different counsel than he had at trial and on appeal to the district court. Miceli now argues for the first time that his trial counsel was ineffective in that he failed to "use any remedy to preclude the admission of any evidence relating to [his] refusal to submit to a chemical test, which evidence was unquestionably damaging to [him] on the issue of driving under the influence of alcohol." We do not reach the merits of this assignment.

Evidence of Miceli's refusal to submit to a chemical breath test went to the jury, despite the fact that under *Smith v. State*, 248 Neb. 360, 535 N.W.2d 694 (1995), Miceli was not properly informed of all the consequences of refusing or of taking and failing a chemical breath test. The Supreme Court has held that a license revocation based upon an attempted advisement by a form identical to the form used in this case constituted plain error. *Perrine v. State*, 249 Neb. 518, 544 N.W.2d 364 (1996). In *State v. Hingst*, 4 Neb. App. 768, 550 N.W.2d 686 (1996), this court recently held under *Smith* and its progeny that such evidence should not have gone before the jury and that the fact that it did reach the jury was prejudicial and constituted plain error which required a reversal of a DUI conviction and remand for a new trial. Thus, under our holding in *Hingst*, we reverse the district court's judgment and remand the cause with directions to reverse the county court DUI conviction and remand the matter for a new trial.

REVERSED AND REMANDED.