IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BROWN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TERRON A. BROWN, APPELLANT.

Filed January 28, 2020.    No. A-19-109.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge.
Affirmed.

Kristina B. Murphree, of Marks, Clare & Richards, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Pursuant to a plea agreement, Terron A. Brown pled no contest to second degree murder and was convicted of the same in the Douglas County District Court. Brown was sentenced to 30 to 40 years' imprisonment, which sentence was to run concurrent with a sentence he was serving in federal prison. The State appealed Brown's sentence as excessively lenient; this court modified Brown's sentence to be served consecutive to his federal sentence. See *State v. Brown*, No. A-05-1417, 2006 WL 2669410 (Neb. App. Sept. 19, 2006) (not designated for permanent publication) (*Brown I*). Brown subsequently filed for postconviction relief, claiming the State had agreed as part of the plea agreement to waive its right to appeal his sentence as excessively lenient; he also alleged his trial and appellate counsel provided ineffective assistance. Brown appeals from the district court's denial of his motion for postconviction relief. We affirm.

## II. BACKGROUND

### 1. FACTUAL BACKGROUND

In February 2004, in the county court for Douglas County, the State charged Brown with one count of first degree murder, one count of use of a deadly weapon to commit a felony, and two counts of first degree assault. After the case was bound over to the district court, the State charged Brown as it had in county court. The record reflects that as early as July, Brown had another criminal case pending against him in the district court, docketed at "162-134." Our record further reflects that as early as April 2005, Brown was in the custody of a federal prison.

On June 10, 2005, with leave of the district court, the State filed an amended information, charging Brown with only one count of second degree murder. A plea hearing took place that day. Those present included two prosecutors (Sandra Lee Denton and Thomas P. McKenney) and Brown himself with his two trial attorneys (Anthony S. Troia and Thomas M. Olsen). The court noted that Brown had previously entered a plea of not guilty to the four counts in the instant case and had entered a plea of not guilty in the other case at "162-134." Defense attorney Troia stated the plea bargain on the record, saying, "It's my understanding that [Brown] will enter a no contest plea. If the [c]ourt accepts his no contest plea, the State will, in turn, dismiss all other charges, including the others docketed in this matter, the other charges." Attorney Troia said Brown would also waive a 24-hour service and formal reading of the amended information. Brown personally agreed that was how he wished to proceed. He was arraigned on the second degree murder charge and entered a plea of no contest to it. At one point, the court sought clarification of the plea bargain. The court questioned counsel as follows.

> Q. [By the court] And plea negotiations of any nature, other than the dismissal of 162-134 [(other case pending against Brown)], if I accept this plea --
> THE COURT: Is that the extent of it?
> [Prosecutor] DENTON: Yes, your Honor.
> THE COURT: Is that the extent of it, counsel?
> [Defense attorney] TROIA: Yes. With the other charges that were also in there will be dismissed too.

The State provided a factual basis for what it alleged happened in February 2003; multiple gunshots were fired at a house which resulted in the death of a 4-month-old infant and nonfatal gunshots to two adults. The district court accepted Brown's no contest plea and found him guilty of second degree murder. The district court ordered that "State of Nebraska versus Terron Brown, 162-134, will be dismissed on the motion of [the] county attorney pursuant to a plea bargain."

At the sentencing hearing on November 9, 2005, prosecutor Denton, Brown, and defense attorney Troia were present. Attorney Troia informed the district court that Brown was incarcerated at that time on a federal conviction, for which he originally received a sentence of 30 years' imprisonment but which had been changed to 20 years' imprisonment following an appeal by Brown. After further argument from attorney Troia, the district court asked if anyone wished to speak. Prosecutor Denton answered that the mother of the deceased infant victim wanted to speak. The prosecutor did not otherwise speak during the sentencing hearing. The mother and

grandmother of the deceased infant victim each spoke. The court then provided some remarks. Brown declined the opportunity to speak personally to the court. The court proceeded to sentence Brown to 30 to 40 years' imprisonment to run concurrent to his federal sentence, with credit for 623 days' time served.

## 2. STATE'S APPEAL AND BROWN'S PETITION FOR FURTHER REVIEW

On November 21, 2005, the State filed a notice of appeal claiming Brown received an excessively lenient sentence. Defense attorney Troia continued to represent Brown but received assistance from attorney Gregory A. Pivovar to write Brown's appellate brief, which contained an argument that Brown's sentence was not excessively lenient because it fell within the statutory range. No cross-appeal was raised regarding the State violating the plea agreement by appealing Brown's sentence. This court found that Brown's sentence was excessively lenient and affirmed his sentence of 30 to 40 years' imprisonment but ordered that "the sentence be served consecutively with Brown's federal sentences totaling 20 years for conspiracy to distribute and possession with intent to distribute crack cocaine." See *Brown I* at *4.

Thereafter, Brown submitted a petition for further review with a supporting memorandum brief to the Nebraska Supreme Court; attorney Pivovar later testified that he helped defense attorney Troia write that brief too. Brown assigned that this court (1) erred in finding that the sentence was excessively lenient (corresponding argument being that the State violated an alleged implied agreement to remain silent at Brown's sentencing by appealing the matter) and (2) erred in ordering Brown's sentence to run consecutive to his federal sentence. Brown's petition for further review was denied on November 15, 2006.

## 3. BROWN'S 2007 MOTION FOR POSTCONVICTION RELIEF

Brown, pro se, submitted several requests to the district court in 2007, including a motion for postconviction relief. The signature box on his submissions showed that he was an inmate in a Louisiana federal prison. The district court granted Brown's requests to proceed in forma pauperis and for appointment of counsel and an evidentiary hearing (to be scheduled later). With the district court's approval, Brown's postconviction counsel took depositions of prosecutors McKenney and Denton and defense attorney Troia in 2008; the State joined in deposing those attorneys. The parties also deposed Brown's trial attorney Olsen in 2008. The record shows that in September 2009, each party deposed attorney Pivovar. In October, the State moved to dismiss Brown's motion. On January 25, 2010, before any evidentiary hearing took place, the district court entered an order in which it stated it lacked jurisdiction to act on Brown's postconviction proceeding because Brown was neither physically in Nebraska, nor was he serving a Nebraska sentence. The district court terminated the appointment of counsel to represent Brown in postconviction proceedings and denied Brown's motion for postconviction relief without prejudice. On February 4, Brown, pro se, appealed that decision; his filings indicated he was still an inmate in a Louisiana federal prison. This court dismissed Brown's appeal for lack of jurisdiction. Brown filed a petition for further review, but it was denied.

### 4. PETITION FOR WRIT OF HABEAS CORPUS
### IN FEDERAL DISTRICT COURT

Brown filed a petition for a writ of habeas corpus in the United States District Court for the District of Nebraska on June 21, 2010. See *Brown v. Nebraska*, No. 8:10CV236, 2011 WL 3861346 (D. Neb. Aug. 31, 2011) (*Brown II*). In its August 2011 opinion, the federal district court noted that Brown's petition rested on allegations that (1) the prosecution violated the terms of its plea agreement by appealing Brown's sentence for his state conviction of second degree murder after agreeing not to comment on the sentence and (2) he was denied effective assistance of counsel related to his other claim. The federal district court found that each claim was without merit and dismissed each claim and Brown's petition for a writ of habeas corpus with prejudice.

### 5. AMENDED SENTENCING ORDER AND
### BROWN'S MOTIONS CHALLENGING IT

In an amended sentencing order filed August 11, 2010, the Douglas County District Court modified Brown's sentence in accordance with our decision in *Brown I*. In September 2013, Brown, pro se, filed a motion for appointment of appellate counsel "for the filing of [a] direct appeal against the amended sentencing order." The district court denied Brown's motion. In December, Brown filed a request for the district court to reconsider its ruling. Brown's motion for reconsideration was denied.

### 6. TRANSFER OF BROWN FROM FEDERAL TO STATE CUSTODY

According to the parties' briefs, Brown completed his federal sentences on February 13, 2017. The record reflects that Brown was delivered into state custody on March 1.

### 7. BROWN'S 2017 MOTION FOR POSTCONVICTION RELIEF

On April 3, 2017, Brown, pro se, filed a motion for postconviction relief and filed a motion for appointment of counsel. On April 13, the district court issued an order in which it appointed counsel to represent Brown for his postconviction matter. On June 27, Brown filed an amended motion for postconviction relief and requested an evidentiary hearing. On August 15, Brown filed a second amended motion for postconviction relief and requested an evidentiary hearing; he claimed that the State breached the plea bargain when it appealed Brown's sentence as excessively lenient and that his trial and appellate attorneys ineffectively represented him in various ways related to the State's alleged breach of the plea agreement. In November, the State filed its response and sought denial of Brown's motion without an evidentiary hearing.

In May 2018, the district court sustained Brown's motion for an evidentiary hearing on allegations within Brown's second amended motion for postconviction relief. In September, Brown was deposed. Exhibits admitted into evidence during the evidentiary hearing in November were: the bill of exceptions of Brown's plea hearing, Brown's deposition from September, the 2008 depositions of prosecutors McKenney and Denton and of defense attorneys Troia and Olsen, and the 2009 deposition of attorney Pivovar. Contained in attachments to those exhibits were the bill of exceptions of Brown's sentencing hearing on November 9, 2005, and Brown's briefs on direct appeal and on the related petition for further review.

On January 14, 2019, the district court entered its order denying Brown's second amended motion for postconviction relief, finding that the claim the State breached the plea agreement by appealing Brown's sentence as excessively lenient was refuted by the record or otherwise lacked merit and that the claims of ineffective assistance of counsel lacked merit.

## 8. APPEAL

On February 4, 2019, Brown, pro se, filed a notice of appeal of the January 14 order of the district court denying him postconviction relief. Brown also filed a motion for court-appointed counsel, which was granted.

## III. ASSIGNMENTS OF ERROR

Brown claims, consolidated and restated, that the district court erred when it (1) found that the State had not agreed to waive its right to appeal his sentence and (2) denied him postconviction relief when his counsel was ineffective in various ways.

## IV. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019).

## V. ANALYSIS

Postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his or her constitutional rights such that the judgment was void or voidable. *Id*.

### 1. CLAIM THAT STATE BREACHED PLEA AGREEMENT

In his second amended motion for postconviction relief, Brown claimed the State agreed to "leave the sentence to the discretion of the [j]udge, stand silent at sentencing and not comment with respect to a particular sentence." He asserted the State breached the plea agreement by appealing his sentence. That claim is almost identical to what he asserted in his federal petition for a writ of habeas corpus, except for the addition of the statement that the State agreed to leave his sentence to the district court judge's discretion. See *Brown II*. Here, the district court found there was no agreement the State would stand mute at sentencing, but even if there was, the State ultimately offered no suggestion as to what the sentence should be and the State did not lose its ability to appeal Brown's sentence as excessively lenient. There was "no evidence whatsoever" that the State ever waived its right to appeal Brown's sentence as excessively lenient.

Brown now claims the district court erred when it found the State had not agreed to waive its right to appeal his sentence. He suggests that because of evidence which "indicates the State agreed to leave sentencing to the discretion of the district court," brief for appellant at 15, that meant the State agreed to stand silent at sentencing and to waive its right to appeal. Brown did not contend in his second amended motion for postconviction relief that the State had ever explicitly agreed to waive its right to appeal and he does not take that position now. His claim appears to be

that the State's alleged agreement to waive its right to appeal was implicit in the State's purported agreement to leave sentencing to the discretion of the district court. The argument for petition for further review of *Brown I* was that it was implied in the State's silence during sentencing that it was doing so under a plea bargain, and that it was "implicit" in the agreement to remain silent that the State would not seek review of the district court's decision.

(a) Law Regarding Plea Agreements

Plea bargaining is an essential component of the administration of justice. See *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). The benefits to be derived from plea bargaining, however, presuppose fairness in securing agreement between an accused and a prosecutor. *Id.* When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Id.* A plea bargain is a contract, the terms of which necessarily must be interpreted in light of the parties' reasonable expectations. See *State v. Alba*, 13 Neb. App. 519, 697 N.W.2d 295 (2005). The resolution of each case depends upon the essence of the particular agreement and the government's conduct relating to its obligations in that case. *Id.*

In Nebraska, the State's appeal of a defendant's felony sentence is authorized by statute. Under Neb. Rev. Stat. § 29-2320 (Reissue 2016), whenever a defendant is found guilty of a felony following a trial or the entry of a plea of guilty or tendering a plea of nolo contendere, the prosecuting attorney charged with prosecution of such defendant or the Attorney General may appeal the sentence imposed if there is reasonable belief, based on all of the facts and circumstances of the particular case, that the sentence is excessively lenient. See, also, Neb. Rev. Stat. § 29-2320 (Reissue 1995) (version applicable to direct appeal in this action; substantially similar to current version).

As the district court in this action and the federal district court in *Brown II* were aware, our court in *State v. Thompson*, 15 Neb. App. 764, 735 N.W.2d 818 (2007), held that the State did not clearly and unambiguously waive its statutory right to seek appellate review of a defendant's sentence as excessively lenient by agreeing as part of a plea agreement to "'remain silent at sentencing.'" *Id.* at 773, 735 N.W.2d at 827. This court recognized that a plea bargain is a contract and that a court is not free to rewrite a contract or to speculate as to the terms of the contract which the parties have not seen fit to include. We concluded:

> The simple and straightforward agreement of the prosecutor to remain silent at the time of sentencing does not in any way implicate, *explicitly or implicitly*, the prosecutor's statutory right to seek appellate review of a sentence that he or she believes is excessively lenient. . . . [W]e simply cannot manufacture a waiver of this important appellate right possessed by the State from language as straightforward and unambiguous as this plea agreement. . . . The effect of [a position to create a waiver when none was expressed or even implied] is that a prosecutor who agrees only to stand silent or mute at sentencing has somehow blithely agreed to accept whatever sentence the sentencing judge hands down--no matter how inappropriate it might be in a particular case for a particular defendant--even though the sentence is within statutory parameters. In so holding, we bear in mind that

Nebraska sentencing statutes provide a broad range of sentencing options in order to tailor sentences to the crime, the criminal, and societal interests.

*Id.* at 773-74, 735 N.W.2d at 827 (emphasis supplied). This court noted that it is erroneous to imply as a matter of law a term which the parties themselves did not agree upon as part of a plea bargain. See *United States v. Benchimol*, 471 U.S. 453, 105 S. Ct. 2103, 85 L. Ed. 2d 462 (1985).

In enforcing the plea agreement that was made by the parties in *State v. Thompson, supra*, rather than expand it by "judicial fiat," we acknowledged the "substantial and longstanding body of Nebraska jurisprudence according substantial discretion to the sentencing judge" and said that "if that discretion is to be unfettered and 'unexaminable' discretion, the State's waiver of its right of appellate review must actually be part of the agreement rather than judicially created from a plea agreement that fails to even mention such a condition." *Id.* at 776, 735 N.W.2d at 828.

Later, acknowledging our decision in *State v. Thompson, supra*, the Nebraska Supreme Court held that courts implementing plea agreements should enforce only those terms and conditions actually agreed upon by the parties. See *State v. Landera*, 285 Neb. 243, 826 N.W.2d 570 (2013). See, also, *State v. Gildea*, 240 Neb. 780, 484 N.W.2d 467 (1992) (terms of plea agreement will not be extended beyond bare terms of that agreement); *State v. Powers*, 10 Neb. App. 256, 264, 634 N.W.2d 1, 9 (2001) (State did not breach plea agreement by using letters as evidence of subsequent criminal activity because State "agreed in the plea agreement not to pursue any charges for the prior letters, but did not agree to never use the prior letters as evidence in a prosecution for subsequent criminal activity").

(b) Relevant Evidence

Prosecutors Denton and McKenney each denied that they agreed to stand silent at sentencing as part of Brown's plea bargain. Prosecutor McKenney indicated there was an expectation between him and prosecutor Denton that no argument would be necessary at sentencing because the family of the infant victim was going to be there, but prosecutor Denton "left the option open" to speak during sentencing. Prosecutor Denton remembered, and the other prosecutor generally agreed, that defense attorney Troia was "very interested in having the time run concurrent with [Brown's] federal time and [the State] absolutely would not agree to that." According to prosecutor Denton, there was no offer to agree to any particular sentence.

Brown testified that his trial attorneys told him that the prosecutors were going to be leaving the sentence "up to the judge to decide the outcome" and "wouldn't be saying nothing [sic] at the sentencing hearing." Brown understood that the State would "drop all the remaining charges and leave the sentence to the judge's discretion." After he found out the State successfully appealed his sentence, Brown said he asked attorney Troia, "how was they [sic] even able to appeal my case when they agreed to leave the sentence to the judge." Brown denied that he ever thought it was a possibility that the State could appeal the sentence given by the district court judge because he "never even knew" that the State "could" do that; he thought the State was not going to try to influence the district court judge's sentence.

Defense trial attorney Olsen recalled the plea negotiation in which he said the prosecutors stated, "we're not going to comment on sentencing. We'll just let the [j]udge decide on that. And

whatever he decides is what he decides." It was attorney Olsen's "understanding" that the State would "leave it to the [j]udge" but "with the proviso that [the State] could not do anything to prevent the family from speaking at the time of sentencing." Attorney Olsen said that one goal in negotiating Brown's plea was for his sentence to run concurrent to his federal sentence and that there was a better chance of that happening if the State was "not up there yelling and screaming for consecutive time." Attorney Olsen agreed that the terms of the plea bargain were put on the record and that at the time, he was confident that the plea negotiation and deal reached was "just that" (what was stated on the record). Brown was "pleading to second degree [murder], that the remaining charges would be dismissed, and that the State was not going to have any specific comment with respect to sentencing" (the latter was not actually stated on the record of the plea hearing); but the "gist" of the plea agreement was "obviously the reduction in the charge." At another point during his deposition, attorney Olsen described the prosecution's comment that they would not say anything at sentencing as more of something that was "just . . . what was going to happen" rather than part of the actual plea agreement. Attorney Olsen indicated that at that time it was the prosecution's general policy to "leave it to the [j]udge" rather than making requests such as for "a specific terms [sic] of years."

Defense attorney Troia recalled that it had been attorney Olsen's "indication" that the prosecutors said "whatever the [j]udge does, he does"; attorney Troia interpreted that to mean that "they weren't going to say anything at the time of sentencing." It was attorney Troia's "understanding" that the State "[was not] going to say anything" during sentencing. "That was their policy," referring to the Douglas County Attorney's office. It was a "normal practice," not something that would have to be negotiated. Attorney Troia was surprised to learn that the prosecution appealed Brown's sentence because he did not think it was going to happen. It was attorney Troia's "understanding" from talking with attorney Olsen that "the prosecutors stated whatever would happen would happen. Whatever the [j]udge would do [sic]."

(c) Plea Deal Did Not Include Waiver
of State's Right to Appeal

Prosecutors Denton and McKenney denied that Brown's plea bargain included an agreement of the State to stand silent during sentencing or an agreement for Brown's sentence to run concurrent to any other sentence he had. Neither prosecutor described that there was any belief that the State could not appeal Brown's sentence in light of the plea deal.

Although Brown now asserts that he thought his plea agreement meant the district court judge's decision at sentencing would be "final," brief for appellant at 12, during his deposition he denied that he ever thought it was a possibility that the State could appeal the sentence, one reason being that he "never even knew" that the State "could" do that. The testimony of defense attorneys Olsen and Troia does not precisely reveal, as Brown now alleges, that they understood Brown's plea agreement to mean that "the State had agreed to not appeal the sentence imposed by the district court." *Id*. The testimony does not even clearly show that the plea deal included that the State would stand silent at sentencing.

What the record does show is that attorneys Olsen and Troia understood that the State would not argue during Brown's sentencing hearing because such conduct would have been

consistent with the general policy of how the prosecution handled sentencing at that time, not because of an explicit agreement to remain silent during sentencing. Attorney Troia said that attorney Olsen related to him that the prosecutors said "whatever the [j]udge does, he does," and attorney Olsen said the prosecutors told him generally the same statement. Attorney Troia interpreted that to mean that the State "[was not] going to say anything *at the time of sentencing*." (Emphasis supplied.) Testimony of the defense trial attorneys reflects that the plea deal did not contain an agreement for the State to remain silent during the sentencing hearing; rather, the understanding was that the State would do so anyway and was related to what would happen at the sentencing hearing before the district court, not on any appeal. Although there is an indication that the defense hoped to receive a concurrent sentence term, neither defense trial attorney testified that a particular sentence was part of the plea deal.

Despite the record clearly showing there was no express agreement to do so, the transcript of the plea hearing nevertheless shows that the State did not argue during Brown's sentencing hearing; prosecutor Denton's single comment was to inform the court that a family member of the deceased infant victim wanted to speak. It would be an impermissible stretch to conclude, without any other evidence to support the actual existence of such an agreement, that the State had agreed to stand silent at Brown's sentencing hearing just because the State ended up doing so. See, *State v. Landera*, 285 Neb. 243, 826 N.W.2d 570 (2013) (courts implementing plea agreements should enforce only those terms and conditions actually agreed upon by parties); *State v. Thompson*, 15 Neb. App. 764, 735 N.W.2d 818 (2007) (while government must be held to promises it made in plea agreement, it will not be bound to those it did not make).

Evidently, Brown believes his claim is unique because of his allegations that the State not only agreed to stand silent at sentencing, but also agreed to leave the sentence to the discretion of the (district court) judge. In his operative postconviction motion, Brown argued the facts here are distinguishable from *State v. Thompson, supra*, where "the prosecutors did not specifically agree to leave the sentence to the discretion of the [j]udge - they only agreed to stand mute at sentencing." We find no distinction of any import between an agreement for the State to leave a sentence to the discretion of the trial judge and one to remain silent at sentencing. They produce the same effect, and neither impacts the State's statutory right to appeal the sentencing order. Even if Brown's plea agreement included an agreement that the State would leave the sentence to the district court judge's discretion and stand silent during sentencing (something the record refutes), that would not have in any way implicated, explicitly or implicitly, the State's statutory right to appeal Brown's sentence as excessively lenient. See *State v. Thompson, supra*. The waiver of the right to appeal must be express and unambiguous. See *id.* The court decides whether the language of a plea agreement constitutes a waiver of appellate rights, which typically employs more precise terms like waiver and appeal. *Id.* Agreeing to remain silent at sentencing does not clearly and unambiguously give up the State's statutory right to seek appellate review of a sentence imposed. *Id.*

We conclude the district court's determination that the State did not agree to waive its right to appeal Brown's sentence as excessively lenient is not clearly erroneous. Therefore, we will not disturb it. See *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004) (defendant requesting

postconviction relief must establish basis for such relief, and findings of district court will not be disturbed unless they are clearly erroneous).

### 2. BROWN'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Brown claims the district court erred when it denied him postconviction relief because his counsel was ineffective in various ways. Defense attorney Troia represented Brown at the trial level and on direct appeal, receiving trial assistance from attorney Olsen and on direct appeal from attorney Pivovar. Thus, as the State concedes, the first opportunity for Brown to raise claims of ineffective assistance of counsel was in his operative motion for postconviction relief. See *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017) (when defendant was represented both at trial and on direct appeal by same counsel, defendant's first opportunity to assert ineffective assistance of counsel is in motion for postconviction relief).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). To show prejudice under the prejudice component of the *Strickland* test, the defendant must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Martinez, supra*. A reasonable probability does not require that it be more likely than not that the deficient performance altered the outcome of the case; rather, the defendant must show a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of this test may be addressed in either order. *Id.*

In his second amended motion for postconviction relief, Brown claimed that attorneys Olsen, Troia, and Pivovar provided him ineffective assistance of counsel by (1) "not placing the entire plea bargain on the record" and (2) "not arguing that the State waived the right to appeal by agreeing to stand silent at sentencing." On appeal, Brown assigns that his counsel was ineffective (1) in "negotiating his plea agreement," (2) in "not placing his entire plea agreement on the record in the district court," (3) "on the direct appeal of his sentence," and (4) in failing to "inform him the State appealed his sentence." Brief for appellant at 4. We will only consider Brown's claims that concern not placing the entire plea agreement on the record and the State's alleged waiver of its right to appeal by agreeing to stand silent at sentencing. Those are the only claims raised on appeal that were also raised in his second amended motion for postconviction relief. See *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018) (appellate court will not consider as assignment of error question not presented to district court for disposition through defendant's motion for postconviction relief).

In his second amended motion for postconviction relief, Brown argued that the plea bargain included that the State agreed to "leave the sentence to the discretion of the [j]udge, stand silent at sentencing and not comment with respect to a particular sentence." Brown stated that the "transcription" of the plea hearing reflected a failure to place on the record the portion of the plea agreement regarding those alleged agreements. The bill of exceptions of the plea hearing shows that the plea agreement was set forth on the record and, indeed, it did not include an agreement as alleged by Brown. However, even if there was an agreement for the State to stand silent at

sentencing and not comment with respect to a particular sentence, Brown was not prejudiced by such an agreement not being on the record because the State ultimately stood silent at Brown's sentencing but for one passing comment to state that a family member of the infant victim wished to speak. There is no merit to this claim of ineffective assistance of counsel.

Brown's other claim regarding counsel's failure to argue on direct appeal that the State violated the plea agreement by appealing the sentence imposed by the district court also fails. As already discussed, any agreement to stand silent during sentencing did not impact the State's statutory right to appeal Brown's sentence as excessively lenient. And, as a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Ely, supra*. Therefore, Brown's counsel could not be ineffective for not arguing on direct appeal that the State violated the plea deal by appealing Brown's sentence as excessively lenient.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court denying Brown's second amended motion for postconviction relief.

AFFIRMED.